[No. G045453. Fourth Dist., Div. Three. Feb. 13, 2013.]

THE PEOPLE ex rel. CITY OF DANA POINT, Plaintiff and Respondent, v. HOLISTIC HEALTH et al., Defendants and Appellants.

**COUNSEL**

Alison Minet Adams and Thomas G. Adams for Defendants and Appellants.

Rutan & Tucker, A. Patrick Muñoz and Jennifer J. Farrell for Plaintiff and Respondent.

**OPINION**

**ARONSON, J.**—A medical marijuana collective, Holistic Health, and its president, Garrison Williams (collectively, Holistic Health), appeal from the

trial court's entry of judgment in favor of the City of Dana Point (the City) following the City's summary judgment motion on nuisance abatement and illegal business practices causes of action. Holistic Health contends summary judgment was improper because triable issues of fact existed on a critical disputed issue: whether Holistic Health, incorporated as a nonprofit, actually operated in that manner in compliance with state medical marijuana law embodied in the Compassionate Use Act of 1996 (the CUA) (Health & Saf. Code, § 11362.5; all further statutory references are to this code unless noted), the Medical Marijuana Program Act (the MMPA) (§ 11362.7 et seq.) and Attorney General guidelines (the Guidelines) concerning medical marijuana dispensaries. Holistic Health also challenges as excessive the trial court's imposition of multimillion-dollar civil penalties, and argues the court failed to consider relevant evidence, improperly imposed the fines on Williams personally, and committed other legal errors.

As we explain, the record shows it remained a disputed issue of triable fact whether Holistic Health made a profit from distributing medical marijuana or instead was organized and operated as a nonprofit mutual benefit corporation. Accordingly, we need not reach Holistic Health's second contention concerning civil penalties because we conclude disputed issues of material fact prevented the trial court from properly granting summary judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The City based its complaint on the "general proposition [that] *the possession, sale, cultivation, or transportation of marijuana is a crime*" (original boldface & italics) and that the absence of any tenable defense rendered Holistic Health's marijuana activities unlawful. As the litigation proceeded, the City focused its discovery efforts on establishing whether the collective violated state law by selling marijuana for profit. (§ 11362.765, subd. (a) ["nothing in this section shall authorize . . . any individual or group to cultivate or distribute marijuana for profit . . ."]; see A.G. Guidelines at pp. 8–9 [recognizing "**Non-Profit**" cooperatives and collectives as lawful mutual benefit member associations for group cultivation and distribution of marijuana <http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf> (as of Feb. 13, 2013) (original boldface)].)

■ In particular, California law requires that all agricultural or consumer cooperative corporations must organize (Food & Agr. Code, § 54036; Corp. Code, § 12311, subd. (b)) and operate as nonprofit entities (Food & Agr. Code, § 54033; Corp. Code, § 12201). Nevertheless, they may make "patronage

distributions" in amounts corresponding to each member's "patronage of the corporation" through the purchase of its goods or services (Corp. Code, §§ 12243–12244), repay or refund member contributions (Corp. Code, § 12445), and even pay "dividends" thereon, as a form of interest on capital, without jeopardizing their nonprofit status (Food & Agr. Code, § 54120 [8 percent "dividend[]" permissible on "excess of association income over association expenses"]; see generally Roberts, *Understanding agricultural cooperatives* (Feb. 1984) 4 Cal. Lawyer 13 ["These dividends are deemed to be in the nature of interest, and therefore do not adversely affect the non-profit character of cooperatives organized under the code."]; see also Corp. Code, §§ 12235, 12451 [annual distributions on contributed capital limited to 15 percent]; Gurnick, *Consumer Cooperatives: What They Are and How They Work* (July/Aug. 1985) 8 L.A. Lawyer 22, 34 (Gurnick).) Valid nonprofit expenditures expressly include executive compensation: "An association may provide a fair remuneration . . ." for "time . . . actually spent . . . in its service . . . ." (Food & Agr. Code, § 54147.)

The City explained in its summary judgment motion that "[t]he point of . . . discovery was to seek evidence as to whether Defendants were operating within the parameters of the CUA, the MMPA, and the A.G. Guidelines (as asserted in their oft repeated 'mantra'), or if instead they are nothing more than an illegal, for profit business enterprise engaged in illegally 'selling' marijuana for profit." The City's discovery efforts did not go smoothly; Holistic Health apparently sought a discovery stay and the City may have obtained an order to compel Williams to appear at his deposition, but these matters are not in the record.

When Williams appeared for his deposition, his counsel and the City's attorney discussed Williams's intention to invoke the Fifth Amendment and trade secret and medical privacy privileges on all questions pertaining to medical marijuana. The City broached the idea of an agreement between the parties that any information Williams or Holistic Health provided "will not be shared outside our office except for with respect to our expert witnesses in this case. It will be used [only] as part of this case. Any information that you designate is privileged we will treat as privileged, [and] make all efforts to keep confidential."

The City's attorney added, however: "I can tell you, just so you know, that one of my expert witnesses in this case will be Adam Powell of the Orange County Sheriff's Department who is in charge of the task force that's dealing with the illegal medical marijuana operations in Orange County. He will see this. I can tell you that Jeff Shunk of the Orange County District Attorney's Office is aware of this deposition and is likely to ask the court through a subpoena or a search warrant, or whatever else the D.A. uses . . . , for a copy

of it. I don't want to kid you and make you think that this won't end up in the hands of federal authorities because it likely will[,] as well as [s]tate authorities." Williams and Holistic Health declined the City's confidentiality agreement on these terms, and Williams asserted the Fifth Amendment at his deposition on all questions about marijuana.

For example, as the City recounted in its eventual summary judgment motion, Williams asserted his right against self-incrimination to all of the following questions: whether Holistic Health sells marijuana products, the types or strains of marijuana products sold, whether Holistic Health receives monetary compensation in exchange for marijuana, whether Holistic Health acquires all of its marijuana from its members, the cash value of the marijuana sold by Holistic Health, the price it pays for marijuana, the cost to grow the marijuana it sells, how the price is determined for marijuana that it sells, and "the efforts (if any) made to determine that members and suppliers are not profiting when they provide marijuana to Holistic Health . . . ."

When Williams invoked the Fifth Amendment to these and similar questions at his deposition, the attorney for the City responded that he intended "to bring a motion to compel and I am going to seek not only monetary sanctions, but I'm going to seek issue sanctions in this case. It is my intention to seek a motion for summary judgment and permanent injunction to prevent Holistic Health from operating on the basis that it has failed to provide any evidence that its sales of marijuana are currently in a manner that complies with the Compassionate Use Act, the Medical Marijuana Program Act, and the Attorney General Guidelines."

The City also noticed the deposition of Holistic Health's custodian of records, but the parties stipulated the custodian would invoke the Fifth Amendment just as Williams had. The City did not bring a motion to compel discovery or to impose monetary or issue sanctions based on the privileges Williams and the custodian of records asserted. Instead, the City sought summary judgment, or in the alternative, summary adjudication.

The City asserted in its motion it was entitled to judgment as a matter of law because there was no dispute Holistic Health distributed marijuana and Holistic Health "fail[ed] to produce any evidence . . . in support of the[] only possible affirmative defense," i.e., compliance with governing medical marijuana law. Specifically, the City staked its claim for summary judgment on its assertion Holistic Health was "nothing more than an illegal, for profit business enterprise engaged in illegally 'selling' marijuana for profit." The City alleged Holistic Health failed to meet its affirmative burden "of demonstrating compliance with the CUA, MMPA and A.G. Guidelines (and refus[ed] to allow the City to conduct discovery into this issue) . . . ." And the

City asserted Williams testified at his deposition that *"Holistic Health operates as a 'business' and that its vendors are making a 'profit' by selling Holistic Health the marijuana products it purchases from them, . . . an unequivocal admission that* **[Holistic Health is]** *operating in violation of the express provisions of the CUA, MMPA, and the A.G. Guidelines."* (Original italics & boldface.)

The City asserted in a footnote in its summary judgment motion that it was entitled to civil penalties on its fourth cause of action for illegal business practices, citing Business and Professions Code section 17206. The City expressly limited its claim to a maximum of $750,000 in civil penalties, calculated on a $2,500-per-day penalty assessment for 300 days. The City asserted Holistic Health operated illegally for more than 300 days, but "stipulate[d] . . . for purposes of summary judgment" to the 300-day figure.

Holistic Health opposed summary judgment on grounds it neither made a profit, nor was organized to do so. Holistic Health argued the City misinterpreted Williams's deposition testimony pertaining to "profit" earned by wholesale vendors who provided *nonmarijuana* items for sale at Holistic Health's store, and Holistic Health also relied both on the undisputed fact it had incorporated as a nonprofit mutual benefit corporation and on a corresponding state tax return Williams furnished at his deposition showing negative net income. As we discuss below, Holistic Health also relied on Williams's declaration and other exhibits Holistic Health filed in opposition to the City's summary judgment motion. The trial court, however, sustained the City's objection under Evidence Code section 352 to these new exhibits on grounds that "Defendants may not now provide [evidence] of their choosing to show that they are in compliance with" state medical marijuana law.

Consequently, the trial court granted the City's summary judgment motion and subsequently entered judgment in the City's favor, permanently enjoining Holistic Health and Williams from "selling, serving, storing, keeping, or giving away marijuana within the municipal boundaries of the City." The court also imposed substantial penalties on Holistic Health and on Williams personally: $1,315,000 for unfair trade practices "[p]ursuant to Business and Professions Code § 17206" and $25,000 in drug house civil penalties "[p]ursuant to Health and Safety Code sections 11581(a), (b), and (c)."[1] The court required Williams and Holistic Health each to pay these sums separately, and both now appeal.

---

[1] On appeal, the City does not address the discrepancy that it only sought in its summary judgment motion "a total civil penalty of $750,000."

## II

## DISCUSSION

A. *Standard of Review and Burdens of Production and Proof*

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]' " (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 562 [88 Cal.Rptr.3d 363] (*Oldcastle*).)

A plaintiff may seek summary judgment or adjudication if he or she contends there is no defense to the entire action or to a particular claim. (Code Civ. Proc., § 437c, subds. (a) & (f)(1).) A plaintiff seeking summary judgment bears the initial burden to prove each element of his or her causes of action. (*Id.*, subd. (p)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) Once a plaintiff moving for summary judgment meets that burden, "the burden shifts to the defendant or cross-defendant to show that a triable issue of one or more material facts exists as to that cause of action *or a defense thereto.* The defendant or cross-defendant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1), italics added.)

■ Here, the City based its nuisance and unfair business practices claims on proving the illegality of Holistic Health's conduct. Cultivation, possession, and sale or distribution of marijuana are each generally unlawful; indeed, these activities and the use of property for these activities constitute criminal offenses (§§ 11357–11360, 11366, 11366.5), absent an exception.

As a plaintiff seeking summary judgment, the City bore the burden to present evidence establishing every element necessary to show Holistic Health's conduct was unlawful as a matter of law. (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra*, 25 Cal.4th at p. 850.) Holistic Health's burden as a defendant opposing summary judgment was to present evidence creating a triable issue of fact on a single element regarding the unlawfulness of its conduct, or a fact concerning a defense to the City's claim its conduct was unlawful. (Code Civ. Proc., § 437c, subd. (p)(1).) Unlike the City, Holistic

Health did not bear the burden to present evidence requiring judgment in its favor as a matter of law. (*Aguilar*, at p. 851.) The difference in the burdens the parties shouldered is crucial because the City staked its summary judgment motion to establish Holistic Health's unlawful operation on a key, underlying material fact: whether Holistic Health operated for profit, thereby violating applicable medical marijuana law.

B. *We Assume a Burden to Prove Compliance with State Medical Marijuana Law as an Affirmative Defense Rested on Holistic Health*

 The City, relying on *People v. Mower* (2002) 28 Cal.4th 457 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*), asserts that once it established as an indisputable fact that Holistic Health distributed marijuana, the burden shifted to Holistic Health to prove an affirmative defense that it complied with state medical marijuana law. In *Mower*, the high court determined under "[t]he rule of convenience and necessity" that a criminal defendant must shoulder the burden to produce and prove facts supporting a defense under the CUA to charges of cultivating and possessing marijuana. (*Mower*, at p. 477.) It remains, however, the prosecutor's ultimate burden to prove the defendant is guilty of unlawful conduct. (*Id.* at pp. 478–479; Pen. Code, § 1096; Evid. Code, § 501.) Consequently, the defendant is not required " 'to persuade the trier of fact of his innocence' " (*Mower*, at p. 479), which would contradict the due process presumption of innocence in criminal matters (*Taylor v. Kentucky* (1978) 436 U.S. 478 [56 L.Ed.2d 468, 98 S.Ct. 1930]).[2] Rather, "as to the facts underlying the defense provided by [the CUA]," the criminal defendant "is required merely to raise a reasonable doubt." (*Mower*, at p. 481.)

The City emphasizes the limited reach of the Fifth Amendment in civil cases. (See, e.g., *Blackburn v. Superior Court* (1993) 21 Cal.App.4th 414, 425–426 [27 Cal.Rptr.2d 204] ["Whereas the Fifth Amendment privilege may be invoked by a civil litigant . . . , it does not provide for protection against civil penalties." (citation omitted)]; *Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 712 [204 Cal.Rptr. 864] ["in a civil case a witness or party may be required either to waive the privilege or accept the civil consequences of silence if he or she does exercise it"]; see also *Keating v. Office of Thrift Supervision* (9th Cir. 1995) 45 F.3d 322, 326 ["A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege."].) The City's insistence, however,

---

[2] A presumption of innocence applies in civil as well as criminal matters. (*Fisher v. Superior Court* (1980) 103 Cal.App.3d 434, 448 [163 Cal.Rptr. 47]; see Evid. Code, § 520 ["The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue."].)

that civil discovery measures require a party's disclosure, on pain of sanctions including issue preclusion or other penalties, may suggest there is less reason than in the criminal context to shift the burden of production to a civil defendant haled into court.

■ On the other hand, the Supreme Court's rationale in *Mower* may support imposing a burden on the defendant to show compliance with applicable medical marijuana law in both the criminal and civil contexts. The Supreme Court explained that under the rule of convenience and necessity, "unless it is 'unduly harsh or unfair,' the 'burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient.' " (*Mower, supra*, 28 Cal.4th at p. 477.) "The rule often has been invoked when the 'exonerating fact' arises from an exception to a criminal statute." (*Ibid.*)

■ In *Mower*, the Supreme Court concluded it would not be unduly harsh or unfair to allocate to the defendant the burden of proving the facts underlying a compassionate use defense to criminal charges. The court reasoned that the facts relevant to the defense, including that the person qualified as a " 'patient' " or " 'primary caregiver' " and cultivated or possessed marijuana " 'for the personal medical purposes of [a] patient' " upon a physician's recommendation, all lay "peculiarly within a defendant's personal knowledge, and proof of their nonexistence by the prosecution would be relatively difficult or inconvenient." (*Mower, supra*, 28 Cal.4th at p. 477.) The Supreme Court also found the CUA constituted an exception to statutes criminalizing the cultivation and possession of marijuana, supporting application of the rule of convenience and necessity. (28 Cal.4th at p. 477.)

We assume without deciding that this rule applies here, and Holistic Health therefore had the burden to produce evidence supporting an affirmative defense based on compliance with state medical marijuana law. In other words, Holistic Health's burden was to establish the existence of a triable issue of fact concerning its defense. As the party opposing summary judgment, however, it was not Holistic Health's duty to *negate* the possibility that its activities were unlawful. Rather, it needed only to produce prima facie evidence creating a triable issue of fact on this question. (See *Aguilar, supra*, 25 Cal.4th at pp. 850–851.) More precisely, its burden consisted of making a prima facie showing on which a reasonable trier of fact *could* conclude it did not operate for profit. (See *id.* at p. 851 ["A prima facie showing is one that is sufficient to support the position of the party in question."].)

C. *The Existence of a Triable Issue of Fact on Whether Holistic Health Operated for Profit Precluded Summary Judgment*

■ As noted, the City staked its summary judgment claim that Holistic Health's actions were unlawful on whether the dispensary operated for profit. But Holistic Health presented ample evidence in opposition to summary judgment that its business was neither profitable, nor set up to make a profit. For example, the collective provided its 2009 "California Exempt Organization Annual Information Return" (form 199), used by charities and nonprofits for tax filings with the Franchise Tax Board, which showed a $35,000 loss for the year. Holistic Health also included in its opposition its December 2009 financial statement confirming negative net income, and a similar December 2010 statement showing an even greater loss. Other evidence included Williams's deposition testimony in which he denied he received "loans" or other compensation from the collective, and testified to the contrary he had *lent* Holistic Health $100,000 of his own money, which had not been repaid. Emphasizing, "I want it noted how much money we lost last year," he explained his dire financial predicament reflected that Holistic Health was not profitable: "My house has been foreclosed on. My boat was repossessed. My motorcycles have been repossessed," and he expressed frustration at the notion "that I'm getting rich when all my stuff is being taken and my credit has been ruined over this whole thing."

Holistic Health's opposition to summary judgment also included evidence it was not organized to make a profit. Its articles of incorporation filed with the Secretary of State identified it as a "nonprofit **Mutual Benefit Corporation**" (original boldface), and stated "[t]he specific purpose of this corporation is to facilitate," upon a licensed physician's recommendation, "herbal or natural remedies for chronically ill patron members who are California residents," which echoed the CUA's express purpose. (See § 11362.5, subd. (b)(1)(A) ["[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician"].)

Williams explained in his declaration opposing summary judgment that "[a]s a nonprofit mutual benefit corporation, Holistic Health does not operate for the profit of its shareholders. Rather, Holistic Health operates as a service to its members and it receives compensation for the cost of doing business." (See Corp. Code, § 12201 [providing for consumer corporations "not organized to make a profit for themselves," but which "conduct . . . business primarily for the mutual benefit of its members as patrons of the corporation"]; see also Gurnick, *supra*, 8 L.A. Lawyer, at p. 26 [member contributions in the form of "service . . . can be required," or members may "participate by patronizing the cooperative entity"].)

■ As one commentator observed long before the question of medical marijuana collectives arose, the fact that a mutual benefit association has income or pays taxes does not establish it is a for-profit enterprise. "[E]arnings may result from operations in excess of expenses. In these circumstances the entity realizes net income for the taxable year. Cooperative corporations like other corporations are subject to income taxation under the Internal Revenue Code . . . ," but that does not mean they are "established to yield a profit for themselves." (Gurnick, *supra*, 8 L.A. Lawyer at p. 27.) Rather, "[c]ooperatives are normally established to provide services to members." (*Ibid.*; see *id.* at p. 34 ["As the persons who do business with the entity, or who take advantage of its services, the cooperative's patrons really receive the benefit of the entity."].) The entity may be able to "deduct from taxable income the amount of patronage dividends paid and allocations made to patrons," but the mere excess of income over expenses does not destroy the entity's nonprofit character. (*Id.* at p. 27.) In any event, Holistic Health's evidence showed no positive ledger here.

In addition to its tax and financial records, and Williams's deposition testimony, his declaration, and the articles of incorporation stating its non-profit purpose, Holistic Health also provided in opposition to summary judgment its written member terms and conditions, which showed member contributions were aimed at sustaining the collective, not to earn a profit. The conditions for membership included the following: "I understand my contributions for medicine I may acquire from this Collective are used to ensure [its] continued operation and that this transaction in no way constitutes commercial promotion," and, "The monies I pay are to help the Collective to continue to operate, to maintain employees and a location and [to pay] the associated costs and expenses of providing its members with medicinal marijuana for their medical needs." Taken together, the evidence Holistic Health presented in opposition to summary judgment constituted a prima facie case on which a reasonable trier of fact could conclude Holistic Health was neither organized to make a profit, nor in fact made one. This was sufficient to defeat the City's motion for summary judgment: simply put, whether the City could rebut Holistic Health's prima facie showing presented a triable issue of fact. In sum, the City did nothing to meet its burden to establish a reasonable trier of fact would be *required* to conclude Holistic Health operated as a for-profit enterprise.

The City succeeded, however, in having the trial court exclude Holistic Health's evidence opposing summary judgment. The City objected to Williams's declaration and Holistic Health's exhibits opposing summary judgment on grounds that the evidence was more prejudicial than probative under Evidence Code section 352. That section provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue

consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

■ Evidence Code section 352, however, has no application here. That section's primary purpose is to pare away dross that " 'uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.' " (*People v. Robinson* (2005) 37 Cal.4th 592, 632 [36 Cal.Rptr.3d 760, 124 P.3d 363].) The trial court therefore may exclude evidence that is "unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009 [62 Cal.Rptr.2d 164].) Shielding the fact finder from inflammatory material or misleading considerations, however, is not the issue at summary judgment, which consists of spotting material factual disputes, not resolving them. (*EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 270 [122 Cal.Rptr.3d 378] ["The purpose of summary judgment is not to resolve issues of fact, but rather to determine whether there are issues of fact that must be resolved through a trial." (italics omitted)].)

To illustrate the point: none of the considerations enumerated in Evidence Code section 352 apply here. Holistic Health's evidence opposing summary judgment was tailored precisely to the dispositive issue of profit. Accordingly, the time necessary for the court to consider the evidence can in no way be characterized as "undue," nor can it be said that evidence on the profit question the City itself framed as dispositive for summary judgment "confus[ed] the issues" or risked "misleading the jury," as Evidence Code section 352 requires for exclusion. The prejudice prong of Evidence Code section 352 does not aid the City either because "the fact probative evidence reflects negatively on [the merits for the party opposing its admission] is not grounds for its exclusion." (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1437–1438 [135 Cal.Rptr.3d 628]; see, e.g., *People v. Karis* (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189] [under Evid. Code, § 352, prejudicial is not synonymous with damaging].) The City cites no authority applying Evidence Code section 352 in the summary judgment context, and our review discovered none. The section did not apply here and furnished no basis for the trial court's ruling.

In its brief in support of its evidentiary objections below, the City relied on discovery enforcement provisions in Code of Civil Procedure section 2023.030, which authorize trial courts to "impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] . . . [¶] (b) The court may impose an issue sanction . . . prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses. [¶] (c) The court may impose an

evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence. . . ."

Specifically, the City complained that admitting Holistic Health's exhibits showing gross income, costs, and negative net income totals and other evidence in opposition to summary judgment "would be entirely prejudicial to the City, and thus should not be permitted" because the City had attempted to elicit details concerning "the necessary factors to establish profits, including overhead expenses and operating costs." It had "propounded Defendants with multiple requests for deposition testimony and documents related to this issue, yet Defendants repeatedly asserted the Fifth Amendment and stubbornly refused to produce any substantive testimony or documents prior to trial. To allow purported evidence of compliance now would be manifestly unfair to the City, and would allow Defendants to improperly use the Fifth Amendment as both a shield and a sword."

■ The City explained the trial court's sanction "authority is 'an inherently necessary one if the purposes of the [Discovery] Act are to be achieved' and as such, the ability to exclude evidence is implicit in the [c]ourt's power to curb abuses and promote fairness in litigation." The act, however, is precise in its terms, which the City ignores. The very section cited by the City in its summary judgment motion, Code of Civil Procedure section 2023.030, provides for discovery sanctions only "after notice . . . and after opportunity for hearing" *and* only in the manner "authorized by the chapter governing any particular discovery method or any other provision of this title . . . ." Under proper circumstances, those sanctions may include monetary sanctions, contempt, and such "orders that are just against the disobedient party, . . . including the imposition of an issue sanction, *an evidence sanction*, or a terminating sanction under Chapter 7 (commencing with [s]ection 2023.010)." (Code Civ. Proc., § 2025.480, subds. (j) & (k), italics added.) The City followed none of these procedures before seeking potentially dispositive evidentiary sanctions in a few lines of its summary judgment brief—without notice, a hearing, a requisite court order, or violation of the order.

Citing *A & M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554 [142 Cal.Rptr. 390] (*A & M Records*), the City argued in its summary judgment motion that "a court is well within its discretion to preclude a party from introducing evidence suppressed during discovery."

The flaw in the City's argument, however, is that it failed to follow through on its threat at Williams's deposition to file a motion to compel and obtain either additional discovery, sanctions, or a protective order in response to Holistic Health's asserted recalcitrance. The record is incomplete, but it

appears the City sought at the time it moved for summary judgment a protective order to preclude Holistic Health from introducing further evidence related to topics on which Williams and the custodian of records invoked the Fifth Amendment, *but the trial court denied the motion.* The trial court apparently denied the motion without prejudice to the City renewing it at trial if Williams attempted to testify.[3] Given the trial court's ex parte denial of the City's motion for a protective order for summary judgment purposes, the trial court unfairly surprised Holistic Health by excluding its evidence at the City's request under Evidence Code section 352. As we have explained, Evidence Code section 352 furnished no basis to exclude Holistic Health's evidence, and the trial court abused its discretion by effectively granting discovery sanctions without a motion or hearing on the motion.

The City's reliance on *A & M Records* is misplaced. There, a defendant accused of distributing pirated records failed to produce at his deposition documents requested by the plaintiff "and also refused to answer any questions of substance on the constitutional ground that his answers might tend to incriminate him." (*A & M Records, supra,* 75 Cal.App.3d at p. 564.) Unlike here, however, the plaintiff in *A & M Records* sought and obtained a protective order. The trial court ordered the defendant to turn over the requested documents by a specified date before trial, or the defendant would be barred from introducing them at trial, and the court also precluded the defendant " 'from testifying at trial respecting matters [and] questions . . . he refused to answer at his deposition.' " (*Id.* at p. 565.) The order "limit[ed] the scope of [the defendant]'s testimony only, and not that of any other witness" at his company. (*Ibid.*)

Like *A & M Records, Fuller v. Superior Court* (2001) 87 Cal.App.4th 299 [104 Cal.Rptr.2d 525] (*Fuller*) illustrates the established procedure that a trial court must consider a protective order or otherwise hold a hearing to evaluate the important interests at stake before excluding testimony or other evidence when a defendant asserts the Fifth Amendment in a civil trial. The *Fuller* court observed that privileged matters, including those falling under the privilege against self-incrimination, generally "lie beyond the reach of discovery," but nevertheless "a party is not entitled to decide for himself or herself whether the privilege against self-incrimination may be invoked." (*Fuller,* at p. 305.) " ' "Rather, this question is for the court to decide *after* conducting '*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore,* whether or not the privilege is well founded.' [Citation.]" [Citations.]' " (*Ibid.,* first italics

<hr>

[3] Had the trial court issued the protective order, we assume it would have specified whether Holistic Health was precluded from presenting new evidence opposing summary judgment. Because the trial court did not grant the City's motion, we express no opinion on the merits of the City's request.

added.) The *Fuller* court explained that a court confronted with a civil defendant exposed to criminal prosecution arising from the same facts must " 'weigh the parties' competing interests with a view toward accommodating the interests of both parties, if possible.' " (*Id.* at p. 307, quoting *Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 690 [208 Cal.Rptr. 743].)

Accordingly, the *Fuller* court held "the trial court in the first instance in exercising its discretion to fashion discovery orders" should employ any one of several procedural accommodations the *Fuller* court suggested, or fashion a new one. (*Fuller, supra,* 87 Cal.App.4th at p. 310.) As pertinent here, for example, when civil defendants invoke the privilege against self-incrimination in pretrial depositions, "[i]nstead of precluding altogether their trial testimony, the trial judge should consider setting a deadline shortly before the trial date for them to announce whether they will be waiving the privilege during the trial. If they indicate an intent to waive it during the trial, the court should order them to submit to deposition questioning designed to reveal the forthcoming testimony. If they persist in resisting even this eleventh-hour discovery, the trial judge should preclude them from waiving the privilege at the time of the trial." (2 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) Privilege, § 12.7, pp. 12-28 to 12-29, citing *Fuller, supra,* 87 Cal.App.4th at p. 310.)

These considerations are equally pertinent for a court faced with a request for a protective order: the trial court must carefully evaluate the competing interests at stake. Here, the City argued Williams's Fifth Amendment claim prevented it from ascertaining how Holistic Health calculated its asserted net loss, and therefore prevented the City from attacking Holistic Health's evidence it did not operate for profit. But because the trial court denied the City's protective order ex parte and otherwise failed to conduct the necessary "particularized inquiry" to tailor an accommodation for the parties' competing discovery and privilege interests (*Fuller, supra,* 87 Cal.App.3d at p. 305), and because Evidence Code section 352 did not independently support the trial court's order, there was no basis for the court to exclude Holistic Health's evidence opposing summary judgment.

Finally, the City argues Williams effectively admitted Holistic Health operated as a for-profit collective because members who provided Holistic Health with edible products profited on their sale of wholesale goods to Holistic Health. The City's attorney asked Williams at his deposition what, if anything, he had "done to try [to] figure . . . out" his wholesale vendors' costs. Williams answered that he conducted "some research on what it costs for different stuff . . . but, you know, it boils down to if a product is X amount of dollars, and you feel that you can justify that money and this expense, then you justify it. Whether you—I meant that's—that's business

101. If somebody wants X amount of dollars for something and you feel you can sell it for Y amount of dollars, is it worthwhile to purchase it."

The colloquy continued: "[Q] Okay. Do the vendors make a profit? [¶] [A] I would—I would think that some of the vendors do, yes. [¶] . . . [¶] [Q] Do you believe that the people that provide you with brownies are making a profit when they sell you the brownies? [¶] [A] I think they are reimbursing themselves for their costs and their expenses and their labor. [¶] . . . [¶] [Q] Do you believe they are making a profit? [¶] [A] I would think that they are making a living. I don't know if you call that a profit or not."

The City seized on the vendors' potential profits because of the MMPA provision that "nothing in this section shall authorize . . . any individual or group to cultivate or distribute marijuana for profit." (§ 11362.765, subd. (a).) The City appears to assume that a member who cultivates marijuana and provides it to his or her collective for distribution may not be compensated for time or labor in doing so without destroying the nonprofit character of the enterprise. (But see Food & Agr. Code, § 54147 ["An association may provide a fair remuneration . . ." for "time . . . actually spent . . . in its service"].)

In any event, even assuming arguendo the City is correct that medical marijuana collective members must volunteer their time and efforts, the City was not entitled to summary judgment based on Williams's deposition testimony about his vendors. Williams explained at his deposition that he would not testify on any matters involving marijuana, and he also explained that Holistic Health carried a host of ordinary products that did not contain marijuana, including vitamins, supplements, and edible products. He noted, "We carry drinks. We carry brownies. We carry suckers, cookies, ice cream. We carry milk shake products. We carry tea. We carry—gosh. Nutrition bars. We carry supplements . . . for drinks and shakes. We carry numerous products. Pizzas. Pastas. Water."

Williams explained some of these products were just like those offered in ordinary grocery stores and, true to form, he invoked the Fifth Amendment when pressed whether marijuana was an ingredient in *any* particular item. The City argued below that Williams's testimony about vendor costs and profits necessarily included marijuana products because "[i]t is indisputable that Williams is testifying about *all* products, including specifically marijuana products, when read in context." (Italics added.) A reasonable trier of fact, however, could infer from Williams's testimony he neither made nor intended to make any admission concerning marijuana. The inferences necessary to support summary judgment must be uncontradicted so that a reasonable trier of fact could reach but one conclusion. (*Oldcastle, supra,* 170 Cal.App.4th at

p. 562.) That is not the case here. Additionally, "All doubts as to whether there are any triable issues of fact are to be resolved in favor of the party opposing summary judgment." (*Ingham v. Luxor Cab Co.* (2001) 93 Cal.App.4th 1045, 1049 [113 Cal.Rptr.2d 587].) Consequently, the City was not entitled to summary judgment based on Williams's purported admission concerning vendor profits.

## III

## DISPOSITION

The judgment is reversed. Appellants are entitled to their costs on appeal.

Rylaarsdam, Acting, P. J., and Fybel, J., concurred.