Filed 5/15/13; pub. order 6/13/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS SOLIS et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B238099<br>(Super. Ct. Nos. 1331260, 1333860,<br>1364838, 1365541)<br>(Santa Barbara County) |

Juan Solis, Sinthia Martinez, and Rudy Lopez operated what purported to be a medical marijuana collective serving some 1,700 members. In defending against various marijuana charges, they invoked the defense provided by the Medical Marijuana Program (MMP)[1] for qualified patients who associate to collectively or cooperatively cultivate medical marijuana. The defense does not apply, however, if the operation does not meet the definition of a "collective or cooperative" and marijuana has been sold for a profit. Here, all of the collective's excess income—purportedly about $80,000 a year—was simply treated by Solis as his personal "salary" without any accountability or disclosure to the collective's membership. Moreover, the collective was not registered as a nonprofit and appellants admitted purchasing marijuana from individuals who were not

---

    [1] (Health & Saf. Code, § 11362.7 et seq.) All further undesignated statutory references are to the Health and Safety Code.

members of the collective. Because there was no evidence to raise a reasonable doubt whether the collective operated for profit or was otherwise lawful, the MMP defense did not apply.

Solis was convicted following a bench trial on three counts of possessing marijuana for sale (§ 11359), and a misdemeanor count of selling or transporting marijuana (§ 11360, subd. (a)). The court further found that appellant committed one of the possession counts while released from custody on bail (Pen. Code, § 12022.1, subd. (b)). Martinez was found guilty on one count of possessing marijuana for sale. Lopez was convicted on one count each of possessing marijuana for sale and selling or transporting marijuana. Appellants were each granted three years probation and ordered to serve time in jail with credit for time served. They contend their convictions must be reversed because the evidence raised a reasonable doubt as to whether their activities were protected under the MMP. We affirm.

FACTS AND PROCEDURAL HISTORY

Pursuant to the parties' agreement, the case was tried on the record of the preliminary hearing and additional stipulated facts. On February 6, 2010, over 20 pounds of marijuana was found in Glen Mowrer III's vehicle during a traffic stop. Mowrer told the police he routinely sold marijuana to several local medical marijuana dispensaries, including The Healing Center (THC), which Solis and Martinez operated out of a storefront at 1437 San Andres Street in Santa Barbara.

On February 17, 2010, search warrants were executed at THC, Solis's residence at 1107 San Andres Street, and his adjoining residence at 701 West Carrillo Street. During the search of the residence at 1107 San Andres Street, officers found a marijuana growing operation with live plants, processing tools, and packing materials. Solis and Martinez were at the residence when the warrants were executed and were both arrested.

At THC, officers found a large quantity and variety of marijuana products along with sales receipts and patient records. Several customers who arrived during the search reported they became "members" of THC by filling out a form and that their only

2

involvement in the collective consisted of purchasing marijuana. None of the members knew how THC operated or gave any input in that regard.

Solis and Martinez told the police they had been operating THC, which had about 1,700 members, for the immediate past three years. Martinez often worked at THC, did the bookkeeping, and occasionally bought marijuana from vendors. She did not know how much money she or THC had made over the past year. Solis said he and Martinez made all the business decisions for THC and provided no services to the customers other than selling marijuana. Solis admitted that THC was not registered as a nonprofit. He also admitted receiving about $80,000 in income from THC in the past year, which he spent on family expenses and entertainment. Every week he bought approximately one pound of marijuana and resold it to THC customers for double the price he paid. He did not have any information regarding the source of the marijuana he purchased. Any vendor could walk in, sign up for membership, and immediately sell marijuana to THC. He knew that some of the vendors provided false names in order to avoid potential "legal problems."

When Solis was arrested, the police told him that THC was being operated illegally and that he was prohibited from conducting any further business. Nine days later, Solis was operating THC again and had put a sign in the window that said, "Yes We Are Open." During a subsequent search and related investigation conducted in May 2010, the police verified that someone had purchased marijuana from THC that same month. On June 3, 2010, the police conducted a controlled purchase at THC through a confidential informant who possessed a doctor's recommendation for medicinal use of marijuana. When the informant stated he was a new customer, he was simply told to fill out some paperwork without any discussion as to how the collective operated.

On June 11, 2010, the police responded to an alarm at Solis and Martinez's residence at 710 West Carrillo and found another marijuana growing operation inside the residence. On June 23rd, the police executed another search warrant at THC and arrested Solis. When Solis was interviewed, he said that he planned to continue reopening THC every time the police shut it down.

On June 25, 2010, Solis was arrested at THC along with THC employee Lopez. The police seized 28 marijuana plants and two scales. Solis was released four days later on the condition that he refrain from reopening THC or otherwise possessing marijuana.

On October 4, 2010, the police found a marijuana vendor receipt signed by Lopez that was issued to THC on September 24, 2010. The vendor, David Ziemer, told the police he had sold six ounces of marijuana to THC on that date. No documentation of Ziemer's membership was included in the records the police had previously seized from THC.

On October 27, 2010, the police executed another search warrant at 1107 San Andres and 710 West Carrillo. When the police entered the residence at 710 West Carrillo, Lopez fled through the rear of the property and was later arrested at 1107 San Andres. Along Lopez's flight path, officers found a brown paper bag containing bottles filled with marijuana. In an outdoor area between the two residences, they found a shed that contained a "makeshift office" with a safe, marijuana products, papers indicating marijuana sales, a scale, and marijuana packaging materials. Inside Solis's residence at 1107 San Andres, the officers found numerous marijuana sales receipts and receipt books containing the signatures of both Solis and Lopez. Many of the documents appeared to indicate that THC had begun delivering marijuana to customers.

In rejecting appellants' MMP defense at trial, the court concluded there was no evidence to raise a reasonable doubt whether THC was operating on a nonprofit basis. The court reasoned: "Nothing in the statutes or the AG [MMP] Guidelines provides for monetary payment for services rendered to the collective or cooperative – certainly not on the order of $80,000 per year to the self-described 'operator' and business decision maker of the collective, who provided no services to the members of the dispensary other than selling them marijuana. Monetary reimbursement that members provide to the collective or cooperative is limited to an amount necessary to cover overhead costs and operating expenses. Defendants have provided no evidence of actual overhead costs or

4

expenses that had to be reimbursed. Rather, the reimbursement amount or, as Solis described it, pricing was simply double the amount [THC] paid for [the] marijuana."

In disposing of Solis's claim that THC members "pooled money" to collectively grow marijuana, the court stated, "there is no evidence of such 'pooling.' There is no evidence demonstrating that money paid pursuant to the set prices listed on boards at THC went into collective cultivation of marijuana. To the contrary, the only facts are that funds went to two destinations: 1) vendors, two of whom appear not to be collective members, and others whose identity and source of marijuana are unknown; and 2) Juan Solis' entertainment and living expenses." The court also found the evidence failed to create a reasonable doubt whether THC was operating as a "collective" or "cooperative" as contemplated by the MMP.

DISCUSSION

Appellants contend their convictions must be reversed because the evidence compels a finding that their activities related to the operation of THC were protected under the MMP. We conclude otherwise.

To determine whether a conviction is supported by substantial evidence, we review the entire record in the light most favorable to the prosecution "to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Silva* (2001) 25 Cal.4th 345, 368.) In applying this test, we do not resolve credibility issues or evidentiary conflicts. Instead, we presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, quoting *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

In 1996, the California electorate approved Proposition 215 and adopted the Compassionate Use Act (CUA) (§ 11362.5), which provides an affirmative defense to prosecution for the crimes of possession and cultivation where the marijuana is used for a

5

patient's personal medical purposes pursuant to a physician's recommendation. The Legislature subsequently enacted the MMP to clarify the scope of the application of the CUA. (See *People v. Kelly* (2010) 47 Cal.4th 1008, 1014.)

A defendant invoking the MMP as a defense bears the burden of producing evidence in support of that defense. (*People v. Mower* (2002) 28 Cal.4th 457, 477-481; *People ex rel. City of Dana Point v. Holistic Health* (2013) 213 Cal.App.4th 1016, 1025-1026 (*Holistic Health*).) Because the prosecution bears the burden of proving the defendant's guilt, the defendant need only produce evidence that raises a reasonable doubt whether his or her acts were protected under the MMP. (*Ibid.*)

Under the MMP, qualified patients and their designated caregivers are entitled to "associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes[.]" (§ 11362.775; *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1172.) Although the MMP does not expressly define what it means to "collectively or cooperatively cultivate marijuana," the Attorney General guidelines (guidelines)[2] provide that "[a] cooperative 'must file articles of incorporation with the state and conduct its business for the mutual benefit of its members. [Citation.] No business may call itself a "cooperative" (or "co-op") unless it is properly organized and registered as such a corporation under the Corporations or Food and Agriculture Code. . . . Further, '[c]ooperatives must follow strict rules on organization, articles, elections, and distributions of earnings, and must report individual transactions from individual members each year.' [Citation.]" (*Hochanadel, supra*, 176 Cal.App.4th at p. 1010.) A collective is defined as "'"a business, farm, etc., jointly owned and operated by the members of a group." [Citation.]' [Citation.] Thus, 'a collective should be an

---

**2** The guidelines were issued pursuant to the Legislature's directive that "the Attorney General shall develop and adopt appropriate guidelines to ensure the security and nondiversion of marijuana grown for medical use by patients qualified under the [CUA]." (§ 11362.81, subd. (d).) While we are not bound by these guidelines, we give them considerable weight. (*People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1011 (*Hochanadel*), quoting *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829.)

organization that merely facilitates the collaborative efforts of patient and caregiver members—including the allocation of costs and revenues.'" (*Ibid.*)

The guidelines further direct that medical marijuana cooperatives and collectives must be nonprofit operations that "'acquire marijuana only from their constituent members, because only marijuana grown by a qualified patient or his or her primary caregiver may be lawfully transported by, or distributed to, other members of a collective or cooperative . . . . *Nothing allows marijuana to be purchased from outside the collective or cooperative for distribution to its members.* Instead, the cycle should be a closed-circuit of marijuana cultivation and consumption with no purchases or sales to or from non-members. To help prevent diversion of medical marijuana to non-medical markets, collectives and cooperatives should document each member's contribution of labor, resources, or money to the enterprise. They should also track and record the source of their marijuana.' [Citation.]" (*Hochanadel, supra*, 176 Cal.App.4th at p. 1010.) In addition, "'. . . [a]ny monetary reimbursement that members provide to the collective or cooperative should only be an amount necessary to cover overhead costs and operating expenses.' [Citation.]" (*Id.* at pp. 1010-1011.)

In determining a marijuana collective or cooperative is a nonprofit enterprise, the size of its membership and its operating procedures are relevant. (*People v. Jackson* (2012) 210 Cal.App.4th 525, 530 (*Jackson*).)[3] An organization's registered nonprofit status and any financial records are also relevant, "including in particular any processes or procedures by which the enterprise makes itself accountable to its membership. An operator's testimony as to the nonprofit nature of the enterprise is of

---

**3** Lopez asserts that "[t]he trial court's statement of decision contains reasoning and tone indicating an undue reliance on the legal fallacy that the CUA and [MMP] disallowed profit." He claims the law is ambiguous in this regard and that therefore "the rule of lenity favors a reversible in this criminal matter. [Citation.]" In support of his assertion, he refers to a purported "open letter" written by the now-retired state senator who co-authored the MMP. This evidence is not part of the record, nor has Lopez requested judicial notice of it. Moreover, the MMP expressly indicates that profit is not allowed. (§ 11362.765, subd. (a); see also *Jackson, supra*, 210 Cal.App.4th at p. 539.) The rule of lenity thus does not apply.

7

course also relevant. [¶] However, by the same token the absence of fairly complete financial records and any accountability to members will also be relevant, especially when combined with a large number of members and evidence of a high volume of business. *In the latter circumstance a trier of fact could reasonably conclude that, notwithstanding an operator's testimony, a large membership, high volume enterprise was in fact operated for profit*." (*Id.* at p. 539, fn. omitted, italics added.)

Here, substantial evidence supports the trier of fact's finding that appellants' evidence failed to raise a reasonable doubt whether THC was a cooperative or collective as contemplated by the MMP.[4] Indeed, the evidence was lacking on virtually every point. THC was not registered as a nonprofit. Although the police found various sales and purchase receipts, the financial records were not complete and there was no accounting of THC's total income and expenses. Solis merely offered that he bought about a pound of marijuana every week for some unspecified price and sold it for double what he paid. He also admitted receiving about $80,000 in personal "income" from THC in the past year, no accounting or other record of which was ever produced. He further admitted he had purchased marijuana from two vendors for whom there were no membership records, and that he knew other vendors had given false names. This evidence is insufficient to raise a reasonable doubt whether THC either operated for profit or otherwise qualified as a collective or cooperative under the MMP.

Appellants claim it is improper to consider Solis's $80,000 "income" as evidence that THC operated for profit because nonprofit organizations are entitled to have paid staff. (See *Holistic Health, supra*, 213 Cal.App.4th at p. 1033 [quoting Food & Agr. Code, § 54147, for the proposition that "'[a]n association may provide a fair remuneration' for 'time . . . actually spent . . . in its service'"].) The MMP guidelines make clear, however, that "[a]ny monetary reimbursement that members provide to the

---

[4] Although appellants uniformly characterize THC as a collective, we assume for the purpose of our analysis that it could be characterized either a collective or a cooperative. (See *People v. Colvin* (2012) 203 Cal.App.4th 1029, 1036, fn. 8 (*Colvin*) ["We refer broadly to cooperatives, collectives, and dispensaries without distinguishing between technical differences that may exist between them"].)

8

collective or cooperative should only be an amount necessary to cover overhead costs and operating expenses." (*Jackson, supra*, 210 Cal.App.4th at pp. 535-536.) Even if Solis's claimed income could be construed as either "fair renumeration" or part of the organization's "operating expenses," Solis never claimed that he merely received a salary commensurate with his efforts that was a component of THC's reasonable expenditures. Instead, he admitted that he simply took all of THC's profits and spent them on himself and his family. It is also undisputed that THC had no accountability whatsoever to its members, who paid for the marijuana from which the profits were derived. Under the circumstances, any inference that Solis paid himself a "salary" of $80,000 as reasonable compensation for services he actually rendered would be insufficient to raise a reasonable doubt whether THC sold marijuana for profit. (*Id.* at p. 539.)

Appellants' citations to recent case law are unavailing. In *Jackson*, which was decided after the opening briefs were filed, the Court of Appeal reversed the appellant's jury trial convictions for selling and possessing marijuana on the ground that the trial court had erroneously prevented him from offering evidence to establish he was entitled to an MMP defense and had refused to instruct the jury on the defense. The trial court based its ruling on the fact that only a few of the collective's 1,600 or so members had actually participated in the cultivation of marijuana. The court also found that it lacked sufficient information to determine whether the collective operated for profit, and thus did not rely on that factor in reaching its decision. (*Jackson, supra*, 210 Cal.App.4th at p. 532.)

In reversing, the Court of Appeal rejected the People's argument that the MMP defense does not apply unless there is evidence that all of a collective's members actively participated in the cultivation of marijuana. The court reasoned that "[s]uch a strict limitation" was inconsistent with both the MMP and the guidelines. (*Jackson, supra*, 210 Cal.App.4th at p. 537.) The court went on to state that while "the relatively large size of a collective or cooperative will not *per se* take it outside the scope of section 11362.775, in any given case the size of an enterprise may nonetheless be quite relevant

9

in determining whether a defendant's participation is protected . . . ." (*Id.* at p. 538.)  As we have previously noted, the court also reasoned that "the absence of fairly complete financial records and any accountability to members" could lead a trier of fact to reasonably conclude that "a large membership, high volume enterprise was in fact operated for profit." (*Id.* at p. 539.)  That is precisely the situation here.

*Holistic Health*, which was decided after all the briefs were filed, is similarly unavailing.  In that case, the court reversed a summary judgment in favor of the city of Dana Point in its action against a medical marijuana collective for nuisance abatement and illegal business practices.  The court reasoned that the collective presented sufficient evidence to create a triable issue of fact whether the collective operated as a nonprofit such that the MMP defense applied.  That evidence included proof that the collective was incorporated as a nonprofit, articles in incorporation identifying the collective as such, and filed tax returns showing net negative income.  (*Holistic Health, supra*, 213 Cal.App.4th at p. 1027.)  Appellants presented no such evidence.

In *Colvin*, the defendant was arrested while transporting about a pound of marijuana and was subsequently convicted by court trial of transporting marijuana and other offenses.  The trial court found that although the defendant was operating a lawful marijuana collective, the MMP defense did not apply "because 'the transportation . . . had nothing to do with the cultivation process.'" (*Colvin, supra*, 203 Cal.App.4th at p. 1036.)  In reversing, the Court of Appeal rejected the implication that the defendant's collective, "with its 5,000 members and 14 growers, is simply too big to allow any 'meaningful' participation in the cooperative process" such that it could not be deemed a "collective" or "cooperative" as contemplated by the MMP. (*Id.* at p. 1039.)  The court reasoned that "this interpretation of section 11362.775 would impose on medical marijuana cooperatives requirements not imposed on other cooperatives.  A grocery cooperative, for example, may have members who grow and sell the food and run a store out of which the cooperative's products are sold.  But not everyone who pays a fee to become a member participates in the cooperative other than to shop at it." (*Ibid.*)  The court went on to note that the defendant's collective had complied with virtually all of the guidelines (e.g., it

was registered as a nonprofit and maintained complete financial and membership records) and the defendant had taken steps to comply with the local ordinances.  (*Id.* at pp. 1040-1041.)

As we have explained, appellants offered no evidence that THC was registered as a nonprofit.  Moreover, their records are woefully incomplete and Solis admitted purchasing marijuana from vendors who were not THC members.  He also admitted that he spent all of THC's profits on himself and his family.  In light of this evidence, the court reasonably found beyond a reasonable doubt that THC operated for profit and did not otherwise qualify as a collective or cooperative under the MMP. (*Jackson, supra*, 210 Cal.App.4th at p. 539.)

The judgments are affirmed.




PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.




11

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____

Law Office of Joseph D. Allen, Joseph D. Allen and Alan Karow for Defendant and Appellant Juan Carlos Solis.

Law Office of Alan Karow, Alan Karow; Law Office of Joseph D. Allen, Joseph D. Allen, for Defendant and Appellant Sinthia Alba Martinez.

Esparza Law Group and Luis Esparza for Defendant and Appellant Rudy Aragon Lopez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

Filed 6/13/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS SOLIS et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B238099<br>(Super. Ct. Nos. 1331260, 1333860,<br>1364838, 1365541)<br>(Santa Barbara County)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on May 15, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.