[No. C041291. Third Dist. Sept. 15, 2005.]

GRUPE COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and RUBY
RIDGEWAY, Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and IV.

COUNSEL

Mullen & Filippi and Paula E. White for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Farrell, Fraulob & Brown and Melissa C. Brown for Respondent Ruby Ridgeway.

Capurro, Rocha & Walsh and Joseph V. Capurro for California Applicants' Attorneys Association as Amicus Curiae on behalf of Respondent Ruby Ridgeway.

## OPINION

**RAYE, Acting P. J.**—Respondent Ruby Ridgeway, while working for petitioner Grupe Company (Grupe) as a computer operator, injured her upper extremities and neck and was awarded temporary disability payments. Petitioner Ace USA (Ace) provided workers' compensation insurance coverage for Grupe. Grupe and Ace's petition to terminate temporary disability was granted. A Workers' Compensation Appeals Board judge (WCJ) found Ridgeway suffered from a permanent partial disability of 39 percent and awarded future medical treatment and attorney fees. In so finding, the WCJ struck the testimony of Ridgeway's vocational rehabilitation expert as violating a discovery order. Ridgeway filed a petition for reconsideration. After granting the petition, respondent Workers' Compensation Appeals Board (WCAB) issued a decision after reconsideration, finding Ridgeway's expert's opinion was admissible and remanding the matter for further development of the medical record.

Petitioners appeal, contending: (1) Ridgeway violated the discovery order, and her expert's opinion should not be considered; (2) petitioner Ace should

not be required to pay costs because of the violation of the discovery order; (3) the medical opinion relied upon by the WCJ constituted substantial evidence; and (4) the WCAB erred in ordering further development of the medical record. We find, as a threshold matter, that the opinion and order granting reconsideration and decision after reconsideration is a final order that can be appealed. We conclude the admission of Ridgeway's expert's testimony comported with Labor Code section 5502, former subdivision (d)(3), now subdivision (e)(3).[1] We shall deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Ridgeway suffered an industrial injury in March 1987 that affected her upper extremities and neck. In March 1989 a WCJ awarded temporary disability payments from the date of injury and continuing, along with further medical care.

In 1992 petitioners filed a petition to terminate temporary disability benefits. The parties entered a stipulation agreeing temporary disability would terminate at the end of July 1992 and vocational rehabilitation temporary disability benefits would begin immediately thereafter.

Subsequently, Ridgeway's condition deteriorated, interrupting vocational rehabilitation. Temporary disability payments began again in August 1994. In April 1996 vocational rehabilitation began anew but was again interrupted. Temporary disability payments recommenced in August 1997.

In June 1999, relying on the opinion of its expert, Dr. Ernest M. Weitz, petitioners filed a petition to terminate liability for temporary disability under California Code of Regulations, title 8, section 10466. Ridgeway objected.

At the hearing, the parties submitted medical reports, but no testimony was taken. The WCJ issued findings and an order. The WCJ determined there was no good basis to terminate temporary total disability. The WCJ also considered Dr. Weitz's opinion, submitted by petitioners. The WCJ concluded: "The reporting of Dr. Weitz is anything but substantial evidence on the issue at hand. The report is stale (11-19-98), and his statement that applicant is permanent and stationary is not based upon substantial evidence."

Petitioners filed another petition to terminate temporary disability in June 2000. Petitioners relied on a May 2000 report by Dr. Weitz. Following a hearing, the WCJ granted petitioners' petition to terminate liability for temporary total disability.

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

In his opinion, the WCJ found: "The applicant is simply on what appears to be a medical maintenance program. [¶] Applicant also told Dr. Weitz that she would be looking for work at the time she saw him this May. She also stated at trial that both her shoulders were worsening. That simply does not correlate with what she told Dr. Weitz. She testified at trial that she also had given Dr. Weitz a truthful and complete history. [¶] The Court found that Dr. Weitz' opinion was not persuasive on the issue in July of 1999. Such was predicated in great part upon Dr. Weitz' opinion that she was still in need of ongoing physical therapy sessions. He finds that she is not in need of such ongoing treatment at this time."

■ There was no appeal from the order terminating temporary disability. Petitioners filed a declaration of readiness to proceed on permanent disability and related issues. Petitioners informed the WCAB that a settlement had been offered but Ridgeway declined to reach a settlement until she had completed her vocational rehabilitation program. Ridgeway also stated her intent to pursue a *LeBoeuf* theory in that regard.[2] Under the rationale of *LeBoeuf*, an injured worker is deemed 100 percent permanently disabled if the evidence demonstrates the worker is medically and vocationally precluded from competing in the open labor market. Ridgeway filed an objection to the declaration of readiness to proceed.

Following a continuance to allow Ridgeway to complete her vocational rehabilitation program, the parties attempted settlement but failed. The parties, in a mandatory pretrial conference statement, stipulated to facts, issues, and witnesses. In the statement, Ridgeway listed as a witness "Dan Sidhu re Le Beauf [*sic*]." Ridgeway provided no other information regarding Sidhu's anticipated testimony.

Trial began on August 27, 2001, and concluded on September 6, 2001. Ridgeway testified about her injury, her three subsequent shoulder surgeries, and her participation in three vocational rehabilitation programs. During her last foray into rehabilitation, she missed several days and found training involving the computer painful. The pain necessitated frequent breaks. Even when not working, Ridgeway experiences pain shooting through her shoulders, and her right shoulder tends to lock up.

Ridgeway testified she felt she could work at home, where she could get up and walk around when necessary. She is never without pain and requires help in dressing.

Ridgeway also presented testimony on the *LeBoeuf* issue.

---

[2] *LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234 [193 Cal.Rptr. 547, 666 P.2d 989] (*LeBoeuf*).

Frank Daniel Sidhu, a vocational rehabilitation counselor, assesses the vocational feasibility of injured workers. Sidhu testified he performed a vocational evaluation of Ridgeway. As Sidhu described it: "The nature of the evaluation was an assessment of Ms. Ridgway's [*sic*] feasibility for employment in the open labor force, and I took . . . into account . . . national statistics, California statistics and local labor market [in] San Joaquin County."

In connection with the evaluation, Sidhu reviewed Ridgeway's medical file and met with her on July 25, 2001, August 2, 2001, and August 8, 2001. He reviewed Ridgeway's vocational rehabilitation reports and performed independent vocational testing. Sidhu provided detailed descriptions of a variety of vocational tests he administered and discussed the results at length. Sidhu also provided a detailed account of his analysis of Ridgeway's subjective complaints concerning pain.

Sidhu testified that based on his extensive evaluation, Ridgeway was motivated to return to work. However, Sidhu concluded: "Based upon the entire review and her education level, all that we discussed, including the work history, it's my conclusion that she was not vocationally feasible at the time of my evaluation, and I do not believe her to be a feasible candidate for the plans as written . . . ."

On cross-examination, Sidhu admitted his opinion as to Ridgeway's inability to compete in the labor market was created after August 17, 2001. Petitioners moved to strike the testimony, arguing it was developed after the close of discovery on July 10, 2001. The trial court denied the motion without prejudice.

Petitioners presented testimony by a rehabilitation counselor, who testified Ridgeway's rehabilitation plans were part time with a goal of part-time work. Although the counselor stated Ridgeway experienced pain, she was also enthusiastic. While the counselor shared Ridgeway's concerns about her ability to work, the counselor believed Ridgeway could work if she felt able. Ridgeway was personable and could sell herself to employers.

Petitioners submitted a posttrial brief.

The WCJ issued a "Findings and Award and Orders and Opinion on Decision." The WCJ made numerous findings, including: (1) Ridgeway suffers partial disability in the amount of 39 percent, (2) there is need for further medical treatment to cure or relieve the effects of the industrial injury, (3) self-procured medical treatment was reasonable and reimbursable by petitioners, and (4) an attorney fee of 12 percent would be allowed.

The WCJ also concluded Ridgeway "was not a credible witness on her own behalf. When faced with contradictions between her testimony and the history given to examining physicians and her rehabilitation counselor, she had not [*sic*] explanation except that others were mistaken. [¶] The reporting and conclusions of Dr. Tempkin [the treating physician] are unfounded and speculative. The Court cannot rely upon such an opinion that does not have its basis in the facts of this case. In contrast, the opinion of Dr. Weitz (who the parties will note the Court previously had relied upon for a substantive finding) was found to be thorough, correct, and corroborated by the entire credible factual record. Dr. Weitz' opinion was used for all determinations of a medical nature including permanent and stationary date, permanent partial disability, and need for medical treatment."

The WCJ also discussed the testimony of Ridgeway's witness Sidhu. The WCJ found: "What is clear from Exhibit '3' and the testimony [of] witness Sidhu was that this discovery was not even **attempted** until after the Court specifically ordered discovery closed on 7/10/01. Applicant clearly violated the discovery order of this Court. Applicant cannot now stand before this Court and seek reimbursement for such costs. Further, applicant cannot introduce testimony of a supposed expert based on matters not attempted until after discovery was closed. To allow the testimony in would be a clear-cut denial of due process for defendant. [¶] The Court did review the testimony and exhibits of witness Sidhu and, even if his testimony and documents were to be fully considered by the Court, nothing would change. His testimony was less than compelling as to applicant's ability to profit from vocational retraining. It is clear that her lack of ability to profit is more a motivational problem than related to her industrial injury."

Ridgeway filed a motion to strike the recommended rating, arguing the rating failed to incorporate the testimony of her vocational rehabilitation expert, Sidhu. According to Ridgeway, Sidhu's testimony provided substantial evidence as to the vocational impact of her medical restrictions.

Petitioners filed a response to Ridgeway's motion to strike the recommended rating. Petitioners argued, under section 5502, former subdivision (f), now subdivision (g), discovery closes at the mandatory settlement conference, and therefore Sidhu's testimony was inadmissible. In addition, petitioners argued the recommended rating reflected the medical evidence.

After the WCJ issued his findings and award, Ridgeway filed a petition for reconsideration with the WCAB. Ridgeway contended the WCJ erred in striking Sidhu's testimony, Sidhu's testimony constituted substantial evidence, and Weitz's opinion was not substantial evidence. Petitioners filed a response to the petition.

Subsequently, the WCJ submitted an amended report and recommendation on the petition for reconsideration. In April 2002 the WCAB issued an "Opinion and Order Granting Reconsideration and Decision after Reconsideration." In the opinion, the WCAB concluded the disclosure of Sidhu as an expert on the pretrial conference statement fulfilled the requirements of section 5502, former subdivision (d)(3), now subdivision (e)(3). The WCAB noted: "Although it was not until . . . 15 days after the [mandatory settlement conference] that Mr. Sidhu first met with the applicant, we note that defendant could have reserved its rights at the MSC to depose Mr. Sidhu prior to trial or to obtain its own rehabilitation consultant and conduct a deposition in rebuttal." The WCAB held: "[O]n remand, consideration must be given to the testimony of Mr. Sidhu, which is relevant on the issue of the extent of applicant's permanent disability . . . ."

The WCAB traced the series of reports by Dr. Weitz, petitioners' expert, and found: "Given applicant's testimony and the fact that Dr. Weitz did not change his opinion in May 2000 from that of his initial permanent and stationary report of November 19, 1998, we are persuaded that his report on applicant's permanent disability is stale [fn. omitted] and therefore deficient. [¶] We are persuaded that further development of the record is necessary including a new permanent and stationary report on the extent of applicant's permanent disability. Therefore, on remand, the WCJ should require the parties to obtain updated medical evidence."

Grupe and Ace filed a petition for writ of review. Ridgeway filed an answer. The California Applicants' Attorneys Association filed an amicus curiae brief in support of Ridgeway.

## DISCUSSION

### I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

Petitioners contend the WCAB's decision to admit the testimony of Sidhu runs afoul of section 5502, former subdivision (d)(3), now subdivision (e)(3), which states: "If the claim is not resolved at the mandatory settlement conference, the parties shall file a pretrial conference statement noting the specific issues in dispute, each party's proposed permanent disability rating, and listing the exhibits, and disclosing witnesses. Discovery shall close on the date of the mandatory

---

*See footnote, *ante*, page 977.

settlement conference. Evidence not disclosed or obtained thereafter *shall not be admissible* unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference." (Italics added.)

The purpose of the disclosure requirement in section 5502 is self-evident: " 'to guarantee a productive dialogue leading, if not to expeditious resolution of the whole dispute, to thorough and accurate framing of the stipulations and issues for hearing.' [Citation.]" (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 684–685 [43 Cal.Rptr.2d 660].)

In the present case, the parties filed a mandatory settlement conference statement (statement) at the mandatory settlement conference on July 10, 2001. The statement listed "Dan Sidhu re Le Beauf [*sic*]." The statement contains no reference to any report or exhibit relating to Sidhu, nor is there any reference to the substance of Sidhu's proposed testimony. The WCJ closed discovery on July 10, 2001, with the exception of allowing the parties to send film to the respective doctors for comment.

At trial, Sidhu testified he received the referral requesting his services on July 11, 2001. Sidhu met with Ridgeway thrice, and all meetings took place after the close of discovery on July 10, 2001. He testified he made his determination as to Ridgeway's vocational prospects after August 17, 2001. Sidhu did not prepare a report prior to trial, nor did Ridgeway request such a report. Sidhu described the evaluation process as on a "rush basis."

Ridgeway claims expert testimony opinion is not "further discovery" governed by section 5502. According to Ridgeway, "Respondent's expert was disclosed at the [mandatory settlement conference], which is all that is required . . . . Moreover, Respondent could not have acted with more diligence in regard to this witness, as the respondent made clear her intention to present expert opinion regarding *LeBoeuf* factors as early as January 11, 2001 in writing to the defendant." Ridgeway also asserts "It was improper for the WCJ to view expert opinion testimony as 'discovery'. It is not expert opinion until it is given. It can change at the time of trial."

The amicus curiae echoes Ridgeway's characterization of expert testimony as outside the scope of section 5502: "Preparation of trial testimony by a witness for the party intending to offer that testimony is not an identified discovery activity except where that witness is a medical expert. While the act of an adverse party to ascertain the likely testimony of such an individual by deposition clearly falls within discovery within a workers' compensation claim. The preparation for such testimony is not discovery."

■ "In construing a statute, our role is limited to ascertaining the Legislature's intent so as to effectuate the purpose of the law. [Citations.] We look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language on its face answers the question, that answer is binding unless we conclude the language is ambiguous or it does not accurately reflect the Legislature's intent. [Citations.]" (*Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1271 [135 Cal.Rptr.2d 654, 70 P.3d 1067].)

■ Here, if the mandatory settlement conference does not settle the dispute between the parties, section 5502 requires the filing of a pretrial conference statement identifying the specific issues in dispute, each party's proposed permanent disability rating, the exhibits, and the witnesses. Nothing in the plain language of section 5502 requires the disclosure of the content or substance of the witnesses' testimony.[5] The standardized pretrial conference statement forms filled out by the parties in this case provide no space for descriptions of the witnesses' proposed testimony, only space to identify witnesses.

■ However, as petitioners point out, section 5502, former subdivision (d)(3), now subdivision (e)(3), also provides that "[d]iscovery shall close on the date of the mandatory settlement conference" and that "[e]vidence not disclosed or obtained thereafter shall not be admissible unless the proponent of the evidence can demonstrate that it was not available or could not have been discovered by the exercise of due diligence prior to the settlement conference." In our view, "discovery" as used in section 5502 is a reference to pretrial processes undertaken to obtain information about an opposing party's case in preparation for trial. It consists of actions calculated to discover information about an adversary's case, not the collection and organization of information about one's own case. Therefore, the discovery restriction in section 5502 is not implicated in the present dispute.

■ Section 5502 also provides that evidence not disclosed or obtained after the mandatory settlement conference will not be admissible. Disclosure refers to the disclosure of exhibits and witnesses in the pretrial conference statement. Therefore, evidence not disclosed on the statement or obtained after the conference is not admissible. The question becomes, what constitutes evidence in this case? Is the substance of the expert's testimony "evidence" that is obtained after the conference?

---

[5] The disclosure requirements under Labor Code section 5502 are less rigorous than those required under Code of Civil Procedure former section 2034. Section 2034 required, under some circumstances, that parties include as part of expert witness disclosure a brief narrative statement of the general substance of the expert's proposed testimony. (Code Civ. Proc., former § 2034, subd. (f)(2)(B), see now § 2034.260.)

■ Since section 5502 requires only disclosure of exhibits and witnesses, evidence not disclosed on the pretrial conference statement or obtained subsequent to the conference can only refer to the identity of witnesses and specification of exhibits. As noted, the language of section 5502 does not require disclosure of the *substance* or *content* of a witness's testimony. Since disclosure of content is not required, failure to disclose or later development of such testimony does not run afoul of section 5502.

■ If a party fails to disclose the identity of a witness or an exhibit in the pretrial conference statement, such evidence is inadmissible under section 5502. If a party subsequently locates an exhibit or obtains a witness following the filing of the pretrial conference statement, again, such evidence is inadmissible under section 5502, unless the party can show the witness was unavailable or could not have been discovered through due diligence.[6]

The content of a witness's testimony suffers no such infirmity. Here, Ridgeway disclosed Sidhu as a witness in the pretrial conference statement. In addition, although not required to do so, Ridgeway further disclosed Sidhu would testify regarding *LeBoeuf*. Clearly, Ridgeway obtained Sidhu as a witness and disclosed his identity in conformity with section 5502.

■ Nor does Sidhu's subsequent development of his testimony run afoul of section 5502. Section 5502 does not require that a witness disclosed in the pretrial conference statement formulate his or her testimony prior to the filing of the statement.

■ We do not fear this interpretation of section 5502 will lead to abuse by parties seeking to conceal testimony from their opponents. The WCJ possesses the power to order depositions and at the mandatory settlement conference may make orders and rulings regarding the admission of evidence, including admission of offers of proof and stipulations of testimony where appropriate and necessary. (§ 5710; Cal. Code Regs., tit. 8, § 10353, subd. (a).) Faced with a party's "sandbagging" an opposing party by failing to develop expert testimony prior to the settlement conference, a WCJ may allow the deposition of the expert after the mandatory settlement conference or even exclude the witness's testimony as antithetical to the aim of fruitful settlement discussions.

---

[6] However, under certain circumstances, such evidence may be admitted by the WCJ. (See Cal. Code Regs., tit. 8, § 10353, subd. (a), giving WCJ's the power to make orders and rulings regarding admission of evidence and discovery matters.)

## IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The petition is denied. Ridgeway is awarded costs on appeal.

Morrison, J., and Robie, J., concurred.

A petition for a rehearing was denied October 14, 2005, and the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 977.